The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Alright, Counsel for Mr. Haas, would you like to commence your argument? Your name is what now again? It's William Dinkin. Alright, we're happy to have you here, and why don't you begin your argument. Thank you. Good morning, Your Honors, and may it please the Court, as I just indicated, my name is William Dinkin, and I represent the appellant Richard Todd Haas. Broadly, this appeal concerns three issues. The first issue concerns two search warrants that were upheld by the district court, despite the case agent's intentional omission from the affidavit of critical and damaging information about the informant's credibility. The second issue concerns the lack of evidence showing that Mr. Haas took a substantial step in furtherance of sex trafficking to support the attempted conviction in this case. And third, we've raised two sentencing issues. The first concerns the district court's, what we believe to be erroneous application of a guidelines enhancement for attempting to traffic two fictitious children under Guidelines Section 2G 2.1B1A, where contrary to the application notes, the person that was representing the age of the minors was not a law enforcement officer. The second sentencing issue that we raise involves the district court's application of a five-level enhancement under the Guidelines Section 4B1.5, despite what we believe to be a significant ambiguity regarding whether that enhancement should apply when the primary guidelines provision that was calculated was not a covered sex crime. And if the court doesn't have an objection, I'd like to start by addressing the sentencing issues first, and in particular the guideline enhancement imposed under Guidelines Section 2G 2.1B1 for the fictitious minors. The facts in this case disclose that it was the confidential witness, which I'm going to refer to as C.W. rather than her actual name or the term confidential witness. That's how she was addressed throughout the case below and in the briefing in this case. So in this case, C.W., who is not a law enforcement officer, represented to Mr. Haas that the ages of the fictional children were 8 and 12. However, plain reading of Application Note 1 discloses that in order for the enhancement for attempted trafficking of a fictional minor to apply under that provision 2G 2.1B1, the age representation has to be made by law enforcement. So Note 1 states, has three different subsections. Section A defines a minor, and so Note 1 is the definition of a minor. And it indicates that a minor is defined as A, an individual who has not attained the age of 18. We don't have that in this case. B, an individual, fictitious or not, who a law enforcement officer represented to a participant, one, had not attained the age of 18, and two, could be provided for the purposes of engaging in sexually explicit conduct. Or C, an undercover law enforcement officer who represented to the participant that the officer had not attained the age of 18. The district court in this case applied the enhancement under subsection A, reasoning that an attempt crime turned on the understanding of the defendant, what he believed, that the individual had not attained the age of 18. That was erroneous. I think a straight reading of the application indicates that. It seems to me that the whole purpose of the 2G2.1 enhancement is to make sure that the participant, the defendant in this case, is clear that the sexual molestation and the sexual abuse is of children and is not under any kind of confusion. And how could there be the slightest doubt in the defendant's mind that his attempted solicitations and his molestations were of minors, and his initial molestation was of an 11-year-old, which is nowhere close to being an adult. And the whole emphasis or the whole reason of the defendant's relationship to the confidential witness was with one purpose in mind, and that is to procure underage girls for himself, to either produce child pornography or for himself to personally molest. And it is true that the law enforcement officers did not personally tell Mr. Haas that they were minors. But on the other hand, C.W. was very explicit and clear in her representations that these were minors because that was the whole reason for their relationship, was to procure minors to molest. And I don't know why the agency principles would not apply because C.W. was in an agency relationship with the law enforcement officers. And it does seem to me that the purpose of the enhancement is to have some awareness and not apply the enhancement where there's some reasonable doubt. But here, whether you take the 11-year-old molestation or the procurement efforts, in neither one of those cases could there be any doubt. And it seemed to me where this Seventh Circuit opinion in United States v. Eternal says, oh, the common sense has to come in here somewhere, and the Seventh Circuit used the phrase that the courts must, quote, not read the guidelines in a way that makes the sentencing commission look foolish. And we would make the sentencing commission look foolish, would we not, if we said, oh, the sentencing enhancement applies when the officers themselves offer a fictitious minor to an individual. But, oh, no, it doesn't apply when the same identical offer is made by a witness not only cooperating with but directed by law enforcement to do. And that would just, it seems nonsensical not to do that because there couldn't be, what happened here is very depressing, and you don't want to be unfair to anybody, but how could there be any doubt to Mr. Haas that he was attempting and committing sexual abuse of very young children? I don't get it. Your Honor, so these cases are often made through the use of law enforcement, as the court knows. And when law enforcement officers are either representing themselves to be under the age of 18 or when they are representing that they have someone available for the participant, the defendant who's under the age of 18, they also are crystal clear about the age of the fictitious individual that they're offering. And we have to presume that the Guidelines Commission, when they wrote this, understood that these cases, obviously they did because they are referencing law enforcement. They know how these cases are often made. And they clarified that an individual fictitious or not, which would go to the attempt. If it's fictitious, it's an attempt because they can't have a completed crime if there's no actual child. But they didn't create a separate category, which they could have, to say that any individual fictitious or represented a participant fictitious or not, had not attained the age of 18. Counsel, this is Judge Richardson. Can I interject here? Yes, sir. If we were to agree with you on this issue, and it showed back up in the district court, you would agree, I assume, that the district court could make the decision to vary upward based on the purpose of this guideline provision, even if it did not technically apply. That that would be, at least theoretically, within the court's power to do. I know you don't think it's a good idea, but that would be within the court's power to do. Fair? I agree, and the question then becomes whether, if it is error, is it harmless or not? I don't know how this would affect the district court in its analysis. It reduces, what happens is that each child represented becomes a separate, they call it a pseudo count within the guidelines. It reduces the guidelines for both of those, because one was represented to be eight, and that's a four level, four levels lower, and then one of them was represented to be, I think, 12, and that would reduce it by another two points. Counsel, is it your position that that would actually change the guidelines calculation? Because I tried to do it, and I had some trouble, because it's complicated, but I thought the guidelines calculation would be the same. It would still be 43. Right, it is super complicated. Here's what I've come up with, and this is, I'm looking at Joint Appendix page 1081 and 1082, and I spent a long time, in fact, last night going through this, because it is complicated. I think the first count, or the first minor goes from 33 to 29. That's on line 42 on page 1081. I don't know if you have it in front of you. I do, but can I jump you to the end, because what I got was that the number would go down, but it would still be over 43. Correct. I reached the same thing. It would come down to 43, right? So don't you end up in the same place? So yes, I reached the same conclusion after doing this, trying to come up with a different conclusion last night, but yes, you come up with 43, because it would be lower. It goes down the total, but because of line 56, everything reverts down to 43. Okay. So this one by itself actually doesn't even change the guidelines range. No, but I don't know how, and I think we'd have to speculate as to how even the internal calculations changing and coming out lower before the final line lowers it may have affected the sentencing judge, but yes, you're right. This one alone would not change the guidelines. The second sentencing issue, and I've only got about a minute left. Oh, you know what, and I'm sorry because we've got so many questions, but I want to just go back quickly to this one, and the question of whether we can treat the CW as a kind of designated law enforcement officer. Does it matter to your argument that she made up these fictitious Baltimore girls on her own before she ever talked to the FBI about the case, that she was not under the direction of the FBI when she first represented these fictitious people as being underage? Well, yes, of course, because that defeats the agency argument to some degree. She's not acting at the direction or as an agent of law enforcement. She's doing that on her own, and so in essence, law enforcement comes in and adopts her position moving forward, but even under the agency argument, it requires that this court disregard the use of the term fictitious in both subsections B, what's only in subsection B, but also C, anticipates that the age is fictitious, and the government's agency argument also... Oh, go ahead. You answer the court. Thank you, Judge. The government, in support of its agency argument, points to other provisions of the law, other statutes, and I think, in fact, in one other place in the guidelines unrelated to this, to say that there are times when a government official is viewed broader to include people acting as an agent, but really what that points out or points up is that Congress, when they're writing a statute, and the Sentencing Commission, when they're writing a guideline, they know the consequences of their words and that they pick them carefully, and they didn't use the word agent here, and we have to give that some meaning. They didn't put it in there. But they did use the word fictitious. They did, and that's why I think it's important that they knew to use the word fictitious but also did not say a law enforcement officer or one acting at the direction of a law enforcement officer. I guess my point is by using the word fictitious, that sort of weakens your argument rather than strengthens it, but, you know, I guess this is one of these situations where maybe a little deference, I know you want to make it as a pure matter of law, but I'm not sure that a little deference isn't due to the district court because, again, just when you're at sentencing and you're applying the guidelines, the common sense of it has to enter in somewhere, and the purpose of it is to make sure that somebody who's attempting sex trafficking of children is not in the dark about their ages and to make sure that, yes, he knows that they are minors, and it's crystal clear what he knows here. And it just seems odd to say that, well, the sentencing enhancement applies when the officers themselves offer a fictitious minor to an individual, but, oh, no, absolutely cannot apply when the very same offer of minors for sexual molestation is made by an agent of law enforcement or a witness cooperating with and directed by law enforcement. It just seems an illogical result in terms of what the sentencing commission was after, which was to apply the enhancement when there's an awareness either from law enforcement or its agent under the direction of law enforcement, under that direction, to make it clear that these are minors involved. And as I understand it, the cooperating witness, it was communicated to her in very clear terms that she was to represent to Mr. Huss that these young girls were minors. That seems to me to be the common sense of it and what the commission was aiming to get at. Right. Judge, I suppose all I could say in response, you're right. It is crystal clear in the record that what was represented to Mr. Huss is that these were minors. And I would end on the note that two circuits, at least, who have addressed the definition of minor for the application of the enhancement have come down differently, United States versus Fulford in the 11th Circuit and United States versus Vasquez in the 5th Circuit, both concluded differently. And in the words of Fulford, they said, quote, where the defendant is not dealing with a law enforcement officer, the enhancement applies only where the minor actually is a true, real live, sure enough minor. And so common sense or not, they were looking at the guidelines that were in front of them, how they were written, and applied them that way. That's what I would ask. I would say one thing to you, and that is that you've made all these different arguments in your brief, and the fact that you haven't been able to cover all of them, that doesn't waive them in any sense. You still, of course, have preserved all of those. And you've also reserved some time for rebuttals. So let me see once again if my co-panelists have any questions of you. Judge Harris, do you have any questions? If I do, I can save them for rebuttal. Okay, fine. Judge Richardson? No, thank you. Okay. We thank you. Now let's hear from the appellee. Good morning, Your Honors. My name is Heather Mansfield, as I previously said, and I represent the United States in this case. After a three-day jury trial, the defendant in this case was convicted of three counts relating to his receipt and possession of child pornography and one count of attempted sex trafficking of minors. And he was sentenced to a guideline sentence of life imprisonment. And this court should affirm the defendant's conviction and sentence because the district court committed no legal error in its rulings in this case. And so I will start as well where the defendant did, which is with the sentencing issues in this case. So turning to the first issue raised by Mr. Haas, that the guideline enhancement under 2B2.1B1A does not apply because of the definition of minor, I think we set out our position in our brief very clearly that the government at sentencing took the position with the district court that agency of principles should apply in this case based on a common sense reading of the guideline. And especially in this case, I would point to the factual record here in the record at trial that although that first meeting between CW, the confidential witness, and Mr. Haas was not done at the direction of law enforcement, that was in her capacity as an escort, she subsequently, after that meeting, when Mr. Haas raised the issue of getting children to use to produce child pornography for profit, she subsequently went to law enforcement who then directed her to continue in this ruse that she had begun and to continue gathering information and seeking to offer these children, an 8- and a 12-year-old, to him for the purposes of producing child pornography. Counsel, this is Judge Harris. I think we're agreeing. I just want to make sure that I do understand the record right. So these fictitious minors were first represented by the confidential witness to the defendant as not yet 18 before she was an agent of law enforcement. But sort of retroactively, that comes in because she was later designated as an agent of law enforcement. Is that how this works? Yes, Your Honor, that is a factual record in this case. They were initially represented by her to Mr. Haas prior to her reporting to law enforcement, and then law enforcement ratified that and, in fact, then did begin directing her to continue in these interactions with Mr. Haas. And I think very clearly then throughout the rest of this, she's ultimately given— What do you make of—I mean, the guidelines enhancement does say who a law enforcement officer represented to a participant had not yet. So how is your reading of that, that those key words, a law enforcement officer represented, why do you think that that allows for the application of agency principles? Your Honor, we believe that— Does that language allow for the application of agency principles? It's clear that you have a very, very strong argument in terms of the common sense of it all. And the purpose of the enhancement is absolutely plain, and it was absolutely satisfied here. And so the one thing that I would appreciate your addressing is just how that word law enforcement, the way the Seventh Circuit interpreted it, how that language permits the application of agency principles. Yes, Your Honor. I believe because agency principles are recognized in other places in the guidelines, but as well as specifically as applied to law enforcement, other places in the law where law enforcement directs private individuals to act on their behalf. And indeed, as this Court is aware, certainly there can be Fourth Amendment violations when an individual is acting at the behest of law enforcement to engage with a defendant. And I don't want to belabor the point, but I think taking those principles and where they appear in other places in the law does apply seamlessly here where law enforcement is referenced. And to go again back to common sense, that it simply would look foolish if the agent had been the undercover CW and represented this exact same scenario to Mr. Haas, but because it was brought to them by a cooperating witness who they then directed to do so, this enhancement doesn't apply. Counselor, this is Judge Harris. Sorry, it's so hard to signal on a phone. Yes. I mean, just as a matter of common sense, it doesn't strike me as that absurd that the Sentencing Commission might want to sort of authorize actual law enforcement officers to sort of engage in these sting operations without sort of putting its imprimatur on a bunch of other people who work loosely with the police running around and trying to entrap people into fake children pornography rings. It's not that crazy to me to think that the commission might have picked its words with care. And so I want to ask you, what is the best – you alluded to other areas of the law where we need agency principles into this. Is there just a particular statute you can point me to or a guideline where the text is law enforcement official, but that has been construed to mean, in addition to law enforcement officials, also people working with them? In the guidelines, Your Honor, there is no – we were unable to find any specific case as to that effect where it did not say agency. We pointed, I know, in our brief to the definition of public official, but that definition does say an individual working on behalf. Right, right. That seems like it cuts the other way. What do they mean, and also people working with the officials, they say that. Yes, Your Honor. I think as to that, Your Honor, I understand your point. I do think that the Fourth Amendment case law on agents of law enforcement does play in our favor. But that's not really construing text in the same way. Is there anything that looks at the phrase law enforcement official as it appears in sort of a comparable guideline or statute and says that language includes people working with law enforcement? No, Your Honor. I do not believe so. Okay. And I think in this instance, I would go back to the point that Judge Harris also made during the appellant's argument that on this particular guideline point, of course, any error that was made by the district court does not affect the guidelines in this case. It reduces, it would simply put them back to 43. We would lose the grouping enhancement under Chapter 3, which again is a guideline range of life. And I do think we can read that as to be a harmless error in this case when a motion for a variance was made in the district court and the district court considered that and denied it, finding that the appropriate sentence in this case was a sentence of life imprisonment. Can we do that since you didn't argue harmless error? If you made that argument in your briefs, I'm with you. But in your view, can we and should we do that when the government did not allege harmless error? Well, we did not argue that in our brief, Your Honor. I think that based on the questions and the arguments made today, I do think this court could look at that in this case or, of course, simply if the court disagrees with the government, remand it for a resentencing, in which case it would not affect the guidelines. But we did not, I will make clear to the court, we did not make that argument in our brief as it was brought up today by Judge Harris. Can I ask you about the other guidelines provision? I don't want to cut my colleagues off if they have more questions than the first one. But I am so confused by this 4B151. And it seems like the government was confused too, right? There were two different positions taken before the district court. So what is your understanding of how this applies in a case like this one where there are two offenses of conviction and one of them is covered, but one of them is excluded? Yes, Your Honor. The government's position on this and our understanding, reading 4B1.5, we start first with the sentencing guidelines and their instructions as to how we calculate sentences. The course is to move through the chapters sequentially. So starting with our guidelines calculation for each offense under Chapter 2, then moving to Chapter 3 to determine how we decide which of those to use and which, if any, grouping enhancements should occur. And then moving to Chapter 4 to see if any additional enhancements. So in this case, going to 4B1.5B, which reads, in any case in which the defendant's instant offense of conviction is a covered sex crime and neither 4B1.1 nor A of this guideline applies and the defendant engaged in a pattern of activity involving prohibited sexual conduct, we apply this enhancement. Go ahead, Judge. Sorry, so I'm just stuck on this language. The instant offense of conviction is a covered sex crime. I must have stared at this thing for hours and I do not understand what the commission intended in a case where there are two offenses of conviction and one is a covered sex crime but one is specifically excluded. How can you impose this penalty without effectively imposing it, at least in part, on the excluded one?  What I'm hearing is that offense of conviction refers to all offenses of conviction. And so in this case... It's so singular, the defendant's instant offense of conviction. It just sounds like it doesn't sound like all offense, any of or all. Okay, but can you read that to me? You read this basically to me in any case in which one of the defendant's instant offenses of conviction is a covered sex crime. Yes, Your Honor. And so we, once, obviously, reading it that way, then it does not, looking at your, it doesn't matter which we are using. Right, if you read it that way, it's fine. It's just that that's not what it says. But I read it. Just so, oh, I'm sorry. So I understand. I'm so frustrated by this. And so just so I understand, I confess it's not apparent to me either, but the reason you're saying that, in essence, is because we go through this sequentially. And so by the time you get to Chapter 4, all of the convictions are combined at that point. Grouping has happened in Chapter 3. And so there is only one. I mean, is that the argument? I mean, that seems like an interesting one, I guess, is what I would say. Well, Judge, it is, as Judge Harris pointed out, an oddly singular wording when, of course, defendants are convicted of multiple offenses at a time quite often. And so reading it, yes, the government's argument is that reading it kind of as in combination with how we apply the guidelines, that it simply refers to any offense of which the defendant has been convicted. And in the case we cited, the 11th Circuit case, McCree coming out, and it doesn't directly address the argument, although it appears that it was raised by the defendant, coming out of his guidelines calculation, the child pornography offense was driving his calculation as well, and not a, quote, covered sex offense as defined by this guideline. And the 11th Circuit found applying the enhancement proper in that case. And again, it doesn't really have an extended explanation of that. But the government believes that the explanation is simply the way that we calculate the guidelines through the different chapters, that when we get to Chapter 4, it is simply referring to an offense of conviction that the defendant has been convicted of, and that that's in line with the purpose of the guideline as well, which is to put this enhancement, to give an additional tool to district court judges to impose this enhancement on particularly dangerous offenders who pose a future threat. I mean, counsel, this is Judge Harris. I fully appreciate your argument, and this is very helpful. I'm frustrated only because I find the text of the guideline itself sort of impenetrable. And I feel like the one thing we sort of know about the purpose is that they did not want to include child pornography offenses. Those are specifically excluded, pulled out of the category of covered sex crimes. And so I do have, and I have a real concern that in a case like this, where it's the child pornography counts that are driving the whole sentence, they're the ones that get you into this range anyway, that to then apply this enhancement, which is not supposed to apply to child pornography offenses, it's not clear to me that it's consistent with the purpose. Well, Judge, I believe it is consistent with the purpose, given that the defendant was convicted, in fact, of a covered sex offense. He was convicted of attempted sex trafficking of children. And despite the fact that that coming out of Chapter 2 does not drive his guidelines conviction, when we get to Chapter 4, that's the case that he has that offense of conviction as defined by this guideline. And that applying the enhancement then in that circumstance is proper under the guidelines. I certainly understand the courts. So I understand that that's also part of your, you know, Chapter 4 is about the person. Chapter 2 is about the offense. Yes, Your Honor. Correct. Yeah. So when we, but when we get to Chapter 4, the purpose is more about, we see it in the career offender guideline as well as this guideline. The purpose is about the person and the history and the danger they pose and which is why these enhancements have been put in place. And so it doesn't matter. Again, it doesn't reference and doesn't matter what is driving the Chapter 2 calculation and which offense we are using for that purpose. As long as the defendant has been convicted of a covered offense, they should be subject to this enhancement and sentence under this guideline. Can I ask you, the defendant, I think, if I'm remembering correctly, argues in part that this is, this should be a rule of lenity case, that this is kind of hopelessly ambiguous. The government had two different positions before the district court, but that's enough to get us to ambiguity. And in cases that we said grievous ambiguity, we've said that we would apply the rule of lenity to the guidelines. So why is that not right? I think Your Honor, it simply is that while again, it's defined fairly singularly offense of conviction, but there are multiple in this case and that it is not, it is not ambiguous such to trigger the rule of lenity because the defendant was convicted of a covered sex offense as defined by this guideline and should be subject to this enhancement when we get to Chapter 4. And you don't think we can put any weight on the fact that the government changed its position on, you know, that the government, when the government submitted its first sentencing brief, it said you can't apply this. Well, Your Honor, I think that once, you know, I certainly understand the court's concern about that. I think the government consulted with probation, did the research. I think looking at specifically, you know, the Dow, all the Dow, the double counting case and McCree cases, which the government cited then in its second sentencing brief when looking at this enhancement. But neither of those actually addresses this problem, right? It's not that you found case law that addresses this issue. Correct. It does not. But I think in McCree, it is clear that the child pornography offenses were the offenses driving after grouping the offenses holding, driving the offense level. So it's similar to this case, but addresses the double counting issue, but more similar than Dow in that sense. So I don't, Your Honor, I, you know, the government, of course, did change its position and tried to get the position that it felt was more, was consistent with how the probation office had determined to apply the guidelines and was consistent with the law on that point. And I, again, as I've already, I don't want to rehash it too much, stated I do believe that when we look at moving through the guidelines and the purpose of Chapter 4 and how it is applied, that it is properly applied in this case, as the district court found. And I'd be happy to address any other issues, and I can briefly turn to the issue raised by the defendant regarding the search warrant in this case, that the search warrant provided ample details supporting a probable cause determination and the purported omissions that the defendant points to are  material to a probable cause determination. When the confidential witness came to law enforcement to report that the defendant had showed her child pornography and asked her if she had access to minors, she, law enforcement then took several steps to corroborate that information. Not only did they corroborate the details about the defendant that the confidential witness had given to them, they actually gave her a recording device and had her engage in recorded phone calls with the defendant in an attempt to corroborate what she was telling them and gain additional evidence to support that and corroborate that information. And, of course, the magistrate reviewing the warrant must take all of this into account in determining the issue of probable cause. And I would submit that there is no reason in this case to believe that was about. The affidavit, I guess, hinges on C.W.'s credibility, and the district court said, I don't know what more the officers could have done because there was, as I understand it, you had face-to-face conversations with her, and my recollection is that the agents had C.W. identify Haas in a photograph and identify all of his contact information, resident phone number, address, and the color and model of Haas' car. And then the question is, are these mundane details that didn't have any bearing on the credibility of C.W.? But I think Illinois v. Gates says mundane details can add up, but she's making claims that Haas was assisting her in the receipt and production of child pornography. And the agent, the affidavit says, and I don't think this was wrong, the agents actually verified this testimony by recording two telephone conversations that C.W. had with Haas. And it's very unusual that Frank's hearings are given in a case where there are omissions rather than false statements. And the reason is it's always easy to say, well, you should have included this, you should have included this, and the rest. And if you start down the road and have Frank's hearings with respect to every affidavit that could possibly have included more information, you are disturbing the calculus of incentives and discouraging officers from actually relying and getting warrants. And the Supreme Court has made clear many times that you want to structure incentives in the direction of getting a warrant. And innumerable Frank's hearings over omissions, they seem to me to go in the opposite direction. Let's say the district court said at the end of it, what more could they have done? Yes, Your Honor. And I think specifically here where there are recorded phone calls that law enforcement reviewed and, of course, summarized in the affidavit, this affidavit, of course, does not even entirely hinge on the confidential witness's credibility where you have these recordings that back up precisely what she is saying. I know that I am certainly out of time. So if the panel does not have any further questions, I would simply reiterate the points we made in our brief that we believe this court should affirm the defendant's conviction and sentence. All right. Judge Harris, do you have any more questions with respect to any of this? No, thank you. All right. Judge Richardson? No, thank you. Okay. Let's hear from the appellant. Let's hear the appellant's rebuttal. Thank you, Judge. So many things I need to get to in my rebuttal time. Would you mind starting with 4B15B? That's what I was going to do. Thank you. So 4B1.5B, first off, there aren't any cases that we found, and it doesn't appear that the government has found any cases either that address the issue of what an instant offensive conviction even means. It is hopelessly confusing what, as Judge Harris pointed out, what's driving the guidelines in this case, or what are driving are the child pornography convictions. And that is obviously because of the grouping, the guidelines all the way through Chapter 2 are multiple plural, and there are offenses of conviction. And then we get to 4B1.5B, and the commission uses the term instant offense of conviction, and the very provision that drives this guideline range is excluded from the definition of instant offense. I don't know where to go with that. I was hoping I could come up with some kind of argument that would say that. In light of the dialogue that we've been having, isn't the focus of 4B1.5 to, as our earlier Dowell case said, to impose an enhanced period of incarceration on criminals who present a And if we sort of clear away the brush and understand that that is a, that you have one covered offense, and then you have the question of does the criminal present, who has the covered offense, present a continuing danger to the public, the assessment of a continuing danger to the public, isn't that the kind of thing, if applying that sort of standard, the kind of thing that we would give some respect to the district court's finding on? Because the district court is likely to have much more of a handle on whether the particular individual is or does not present this continuing danger. So what's wrong with looking at it that way? It almost presents, as you put it that way, who do we give deference to? Is it the district court judge or the commission that wrote the guideline? They use the singular instant offensive conviction. It's not clarified. And I still think it's ambiguous. I understand the argument that it's part of the animating purpose of Chapter 4. Can I ask a slightly related question? So when we look at, and I don't want to say that I've looked at all of them, but if we look at Chapter 4 as a general matter, you think about criminal history categorizations, all these sorts of things. It always uses the singular. So it seems to throughout 4A and 4B to refer to the instant offense. And yet when we do that in 4A, for example, for like the 15-year rule for a look back, we don't pick one of the offenses. We look at whether it's within 15 years of any of the convictions. So it seems like in lots of other areas in Chapter 4, we understand instant offense to refer to all of the offenses, to all convictions, and that that's consistent throughout Chapter 4. It's not unique to this provision. No, I agree with you, but I think in every other instance in Chapter 4 we're essentially going back through somebody's criminal history for the most part, and we're looking at them conviction by conviction. So we're looking at does this instant offensive conviction, did it happen more than 15 years ago? And then we're going on to the next one. But in a scenario where we have, let's imagine the case where you have two different drug distributions, right, and they're a year apart, and you have a prior conviction that is 14 years before the earliest of the distribution offenses, we don't look at which of those distribution offenses is driving the guidelines. We say, well, since that prior conviction is within 15 years of either of those two distribution offenses, it counts for criminal history, which runs against both of them, even though the second distribution offense in my hypothetical would not be, you know, it wasn't within 15 years of that. So the look back includes both in 4A. I agree with you on that. It does look back, and it does not specify which of the offenses that you're looking at. But I don't know. I think that the confusion on this is the fact that the child pornography is explicitly excluded, and that makes it confusing when the court uses the singular instant offensive conviction. So number one, that's patriotic. You know, one of the things that does concern me, both with the 2G2 and the 4B1.5, is that you're in each case urging us to overturn the application of the enhancement on the one case where the individual was perfectly aware that the people he was attempting sex trafficking with or molestation were children, and then we're asked to overturn the 4B1.5 in the case of an individual whom at least it seems to me, in light of his sexual molestation of an 11-year-old and the attempted trafficking and procurement of the young underage girls, to represent a clear continued danger to the public. And I wonder when you take these arguments you're making cumulatively, are we not eviscerating the purposes, the clear purposes of these two guideline enhancements, which taken together, what the Sentencing Commission is trying to do is to take an individual with this perfectly sorted history and make sure that he gets an appropriate sanction. And here it seems to me that that clear primary purpose could be undercut here by hyper-technical readings that I don't think are compelled by the text. And maybe the confusion about some things invokes the rule of lenity. I grant you that there's a certain amount of confusion here, but before invoking a rule of lenity, there's got to be a reason for invoking the rule of lenity. And I don't know that we have that reason where the district court has found somebody to be a real continuing threat to other minors whom he would attempt to molest or traffic or abuse in some kind of way. I just worry about the cumulative effect of these two enhancements that you want to overturn. And in each case, it seems to me that we're thwarting a fundamental purpose, which is to take somebody with this, as I say, perfectly sorted behavior and chop the sentence way down. It just makes me feel uncomfortable about that when you take the totality of this and what it involves. Judge, I completely understand the impulse. I have very bad facts here. Hopefully it's more than an impulse. I understand the careful reasoning, Judge. I have bad facts. There's no question about it. What Mr. Haas was convicted of is uncomfortable, and it's bad. Now I'm going to speak from my perspective. The impulse or the urge at that point, looking at facts like this, is to fix, if you will, or find a way out of situations where the guidelines in the situation with 2G 1.2b, where I think on its face the guidelines don't apply, and to then look at the animating aspect of the guidelines rather than the words. And in the case of 4B 1.5b, to overlook the ambiguity that's patent on its face, because the fact that— All I can say to you is that, of course, textualism is very important here. I don't think that textualism drives me ineluctably to the conclusions that you would have me reach. But I think that sentencing is factually driven. It is a different exercise from many other things, and there is a large factual component here. And district courts are to be given some discretion in applying that, and it's supposed to be individualized and it's supposed to be factual. And when you ask me to ignore the clear purpose of things and agency principles and the fact that his behavior clearly marks him as a future risk and a future danger to young girls, I just don't know. Because I think sentencing is supposed to apply common sense, and I think that sentencing is to apply facts, and I think sentencing is to look at individuals and what individuals—what they want and what they merit. And that is why the guidelines give district judges the opportunity to vary from the guideline range, either upward or downward, when the facts of the case warrant. And so it isn't quite—it is to an extent the rigid exercise that you posit, but it's not exclusively the rigid approach that you advocate, because to me it seems a mixed situation where individualization applies, facts apply, purposes apply. If the textual reading was a slam dunk, okay, you know, I grant you that, but it is not a slam dunk. And that is why these other purposes of sentencing and things, that is why they kick in. And I'm just, you know, being frank about it, and maybe it is what you said in all good faith was an impulse. Well, if it was an impulse, I guess I own it, because I just think what happened here was so doggone sad. And I think of the life of this 11-year-old minor girl who's been ruined by this, and I think also what would have happened to those other girls had they been produced? And so yes, maybe it is an impulse on my part, and I would put the impulse aside if I thought those enhancements were the kind of slam dunk that you make a very— you know, you make an able advocate, and I appreciate that, but I don't think they're slam dunks. And this individual wreaked havoc with people's lives, and wanted to wreak havoc on many, many more, and took substantial steps in that direction. It wasn't some academic interest, and it wasn't some fantasy or whatever. He was doing everything he could to have these little girls produced for him, so he could ruin their lives, too. And I just don't see—it doesn't seem to me appropriate, and I may be the only one that feels that way, but it doesn't seem to me to be appropriate in this case to adopt views of those enhancements, which I do not think are compelled. Your Honor, I hope I didn't offend you by using the word impulse. I would just say this— You did not offend me. You've earned my respect. I would just say this to the panel regarding the sentencing issues. Sentencing discretion is, as you pointed out, it's fact-intensive, and it looks at both the person and the facts. But it has to start with the proper calculation of the guidelines, and then the court's discretion kicks in. And if this case is remanded, I would imagine it's very likely that he would still earn himself, my client, a life sentence. I don't know that, though. But that's where the discretion should be, at sentencing, after the guidelines are calculated correctly. And so I won't go back through my arguments again, but I would ask, at a minimum, that this case be remanded for sentencing under the recalculation of the guidelines. All right. Judge Harris, would you like to ask anything more of this gentleman? No, thank you. Judge Richardson? No, thank you. All right. I want to thank you both for your arguments. They've been quite able. And, counsel, you haven't offended me in the slightest, because I always appreciate a good argument, and I think you've made one. And both of you leave with my considerable respect. Have a nice afternoon. Thank you, Judge. And we will adjourn court. Thank you. This honorable court stands adjourned until this afternoon. God save the United States and this honorable court.
judges: J. Harvie Wilkinson III, Pamela A. Harris, Julius N. Richardson